[Tagged]



**ORDERED in the Southern District of Florida on July 29, 2013.**

Erik P. Kimball, Judge
United States Bankruptcy Court

___

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH DIVISION

| | |
|---|---|
| In re: | CASE NO.: 11-19665-EPK |
| GARY P. ELIOPOULOS, | CHAPTER 7 |
| Debtor. _____/ | |
| PAH CO., | |
| Plaintiff, | ADV. PROC. NO.: 11-02657-EPK |
| v. | |
| GARY P. ELIOPOULOS, | |
| Defendant. _____/ | |

**ORDER DENYING MOTION OF PLAINTIFF
PAH CO. FOR SUMMARY JUDGMENT [ECF No. 34]**

**THIS MATTER** came before the Court upon the *Motion of Plaintiff PAH Co. for Summary Judgment* [ECF No. 34] (the "Motion"). For the reasons that follow, the Motion is denied.

1

Plaintiff PAH Co. (the "Plaintiff" or "PAH") initiated this adversary proceeding against Gary P. Eliopoulos (the "Defendant") on October 13, 2011. PAH seeks a denial of the Defendant's discharge under sections[1] 727(a)(2)(A) and 727(a)(7) (Counts I and II, respectively) and also seeks a determination that a debt owed by the Defendant to PAH is excepted from discharge pursuant to section 523(a)(6) (Counts III through VI).

With regard to its claims under section 523(a)(6), PAH alleges that the Defendant's debt to PAH is non-dischargeable because of the following willful and malicious actions: the Defendant fraudulently induced PAH to enter into an architectural contract (Count III); the Defendant intentionally interfered with a contract between PAH and another entity called Europa Building Associates, Inc. ("Europa") (Count IV); the Defendant and Europa conspired to interfere with the architectural contract between PAH and the Defendant (Count V); and the Defendant made material misrepresentations that caused the Building Department to issue permits in violation of applicable law (Count VI). PAH alleges that it suffered monetary damages as a result of, among other things, excessive design and construction charges and construction delays.[2]

PAH does not explicitly seek summary judgment on Count VI of the complaint. In addition, although the Motion cites section 727(a)(2) and PAH's factual presentation includes allegations that could form a basis for a claim under that provision, the argument presented in the Motion focuses on relief under section 727(a)(7). In particular, PAH argues that the Defendant caused his architectural firm, Eliopoulos Architecture, Inc. ("EA"), also a debtor in bankruptcy, to transfer assets in an effort to hinder, delay and

---

[1] Unless otherwise noted, the word "section" or "sections" refer to provisions of the United States Bankruptcy Code, 11 U.S.C. §§ 101 *et seq.*

[2] In the complaint, PAH does not ask the Court to liquidate this debt. PAH requests only that whatever debt is owing by the Defendant to PAH as a result of the acts alleged in the complaint be excepted from the Defendant's discharge in this case. If successful at trial, upon termination of or relief from the automatic stay, PAH may seek to have the debt liquidated in a court of competent jurisdiction.

2

defraud creditors. In the Motion, PAH does not specifically address how the Defendant transferred any of his own property in violation of section 727(a)(2). PAH presents no specific argument in support of summary judgment on Count I of the complaint. As a result, this order addresses only Counts II through V of the complaint.

**Background**

The Defendant is an architect. He filed a voluntary chapter 7 petition on April 11, 2011. At the time of the bankruptcy filing, the Defendant owned 49% of EA. The Defendant's spouse, Alison "Toni" Eliopoulos, owned the remaining 51% of EA. The Defendant served as president of EA; his spouse served as vice president. EA filed its own voluntary chapter 7 petition on April 13, 2011.

Before the Defendant and EA filed their bankruptcy petitions, PAH pursued relief against the Defendant and EA in a Florida state court action (the "State Court Action"). The State Court Action remains pending in the Circuit Court of the 15th Judicial Circuit in and for Palm Beach County, Florida. The dispute centers around architectural and contracting work on an historic building known as the "Leh-O-Mar," located at 700 South Olive Avenue in West Palm Beach, Florida (the "Leh-O-Mar").

In 2000, PAH purchased the Leh-O-Mar. PAH and Europa, a general contractor, entered into an oral contract to modify the Leh-O-Mar (the "Build-Out Contract"). Pursuant to the Build-Out Contract, Europa was to charge PAH cost of the work plus 15%.

After PAH and Europa entered into the Build-Out Contract, Europa introduced PAH to the Defendant and his company, EA. On May 19, 2000, PAH (through its president Peter Halmos), Eliopoulos & Associates, Inc. (through the Defendant as its president), and EDRC Architects, Inc. (through its principal Ralph Cantin) executed a contract (the "Architectural

Contract") whereby the Defendant was to perform architectural and engineering services in connection with the Leh-O-Mar.

At a meeting between Bob Arnold (vice president of and attorney for PAH), the Defendant, Ralph Cantin (principal for the other architectural firm involved in the project), and Barry Brotemarkle (Europa's principal), the Defendant and Mr. Cantin executed the Architectural Contract. PAH did not execute the Architectural Contract at the meeting but did so at a later time. At that same meeting there was discussion about having subcontractors do some of the drafting for the project. Subcontractors did in fact assist by marking up draft plans for the project and the related expenses were passed along through Europa to PAH.

At some point, the Defendant and PAH had a falling out and PAH refused to pay the Defendant. The Defendant sought payment from and was paid by Europa. Europa then billed PAH for reimbursement of the payment to the Defendant, as a cost of the project plus the 15% mark-up.

During the negotiation of the Architectural Contract, the Defendant's architectural license lapsed as a result of his failure to pay the appropriate fee. The Board of Architecture and Interior Design of the State of Florida later reinstated the Defendant's architectural license conditioned on payment of a fine. In doing so, the Board stated that the Defendant was not aware that his license had lapsed. The Defendant alleges that his failure to pay the renewal fee to the Board was inadvertent and that he did not know until after he signed the Architectural Contract that his license had lapsed. PAH argues that the Defendant concealed the fact that he was not licensed as an architect in an effort to induce PAH to enter into the Architectural Contract.

Prior to the bankruptcy filings, the Defendant started to wind up EA's business. He became employed by a new entity formed in 2009 called GE Architecture, Inc. ("GE"). GE

operates in the same office space previously occupied by EA, uses equipment previously used by EA, and retains all but one of EA's former employees. To the extent any of EA's property was transferred to GE, GE did not pay anything to EA for such property. The Defendant's spouse is the president of GE; the Defendant is the vice president. The Defendant's spouse is the sole owner of GE.

**Summary Judgment Standard**

Federal Rule of Civil Procedure 56(a), made applicable to this matter by Federal Rule of Bankruptcy Procedure 7056, provides that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). "An issue of fact is 'material' if it is a legal element of the claim under the applicable substantive law which might affect the outcome of the case." *Allen v. Tyson Foods, Inc.*, 121 F.3d 642, 646 (11th Cir. 1997). In considering a motion for summary judgment, the Court must construe all facts and draw all reasonable inferences in the light most favorable to the non-moving party. *Id.*

The moving party has the burden of establishing that there is an absence of any genuine issue of material fact. *Celotex*, 477 U.S. at 323. Once the moving party meets that burden, the burden shifts to the non-movant, who must present specific facts showing that there exists a genuine dispute of material fact. *Walker v. Darby*, 911 F.2d 1573, 1576 (11th Cir. 1990) (citation omitted). "A mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be enough of a showing that the jury could reasonably find for that party." *Id.* at 1577 (*citing Anderson*, 477 U.S. at 252).

At the summary judgment stage, the Court will not weigh the evidence or find facts; rather, the Court determines only whether there is sufficient evidence upon which a reasonable juror could find for the non-moving party. *Morrison v. Amway Corp.*, 323 F.3d 920, 924 (11th Cir. 2003).

**Analysis**

**Section 523(a)(6)**

PAH seeks to except from discharge under section 523(a)(6) a claim arising from willful and malicious injury. PAH presents three bases for this claim: (1) that the Defendant fraudulently inducing PAH to enter into the Architectural Contract; (2) that the Defendant intentionally interfered with the Build-Out Contract; and (3) and that the Defendant conspired with Europa to intentionally harm PAH.[3]

An injury alleged as the basis for a non-dischargeable claim under section 523(a)(6) must be both willful and malicious. Reckless or negligent conduct is not sufficient to prove "willful" for purposes of section 523(a)(6). *Kawaauhau v. Geiger*, 523 U.S. 57 (1998). The plaintiff must show either that the defendant intended to cause the injury itself or that the defendant acted intentionally and the act in question was certain or substantially certain to result in the injury.

Consistent with this analysis, the Eleventh Circuit Court of Appeals held: "Because Congress reenacted section 523(a)(6) in the context of the common law, we conclude that a debtor is responsible for a 'willful' injury when he or she commits an intentional act the purpose of which is to cause injury or which is substantially certain to cause injury." *Hope v. Walker (In re Walker)*, 48 F.3d 1161, 1165 (11th Cir. 1995) (citing Restatement (Second)

---

[3] Though at least one of the Plaintiff's theories sounds in fraud, the Plaintiff chose to proceed only under section 523(a)(6) and not under section 523(a)(2), which expressly addresses claims arising from fraud.

of Torts § 8A). Although the Eleventh Circuit issued its decision in *Walker* prior to the Supreme Court's ruling in *Kawaauhau*, the Eleventh Circuit thereafter confirmed its analysis in *Walker*. *Thomas v. Loveless (In re Thomas),* 288 Fed. Appx. 547, 549 (11th Cir. 2008) (*citing In re Walker*, 48 F.3d at 1165).

Where, as here, the injury consists of financial harm, the Court applies a subjective substantial certainty standard. *Stewart Tilghman Fox & Bianchi, P.A. v. Kane (In re Kane)*, 470 B.R. 902, 942 (Bankr. S.D. Fla. 2012), *aff'd*, 485 B.R. 460 (S.D. Fla. 2013). Thus, a plaintiff who seeks to prove that an injury was "willful" within the meaning of section 523(a)(6) by establishing not that the defendant intended the injury but that the defendant acted intentionally and the injury was substantially certain to result, must prove that the defendant knew the act was substantially certain to cause injury. Where proof of the defendant's knowledge with regard to substantial certainty is required, the defendant is unlikely to admit that he or she acted with actual knowledge an injury would result. "In addition to what a debtor may admit to knowing, the bankruptcy court may consider circumstantial evidence that tends to establish what the debtor must have actually known when taking the injury-producing action." *Id.* at 941 (*quoting Carrillo v. Su (In Re Su),* 290 F.3d 1140, 1146 n.6 (9th Cir. 2002)).

Section 523(a)(6) also requires that the debt arise from a "malicious" injury. "Malice can be implied when a debtor commits an act that is 'wrongful and without just cause or excessive even in the absence of personal hatred, spite or ill will.'" *In re Thomas*, 288 Fed. Appx. at 549 (*quoting In re Walker*, 48 F.3d at 1164).

PAH alleges that the Defendant fraudulently induced PAH into entering into the Architectural Contract. PAH points to three claimed misrepresentations and/or concealments. First, PAH alleges that the Defendant represented to PAH that he was

properly licensed as an architect when he was not.  Second, PAH alleges that the Defendant failed to disclose to PAH that neither the Defendant nor EA was licensed as an engineer by the State of Florida and that neither the Defendant nor EA intended to retain licensed engineers to perform tasks required under the Architectural Contract.  Third, PAH alleges that the Defendant concealed a prearranged deal among the Defendant and certain subcontractors under which those subcontractors would draft some of the plans required under the Architectural Contract and the cost of the subcontractors' work would be passed on to PAH outside the Architectural Contract such that PAH would be required to pay extra for such services.

There remain multiple genuine disputes of material fact in connection with PAH's claims under section 523(a)(6).  Disputed facts include, *inter alia*, whether the Defendant knew his architectural license was not active at the time he negotiated and executed the Architectural Contract; what representations the Defendant made, if any, regarding how engineering work would be accomplished under the Architectural Contract; when and by whom it was determined that subcontractors would provide assistance with project plans; whether PAH knew at the time the parties entered into the Architectural Contract that subcontractors may be involved in assisting with project plans; the full terms of the agreement between PAH and EA including whether the Architectural Contract is a complete representation of such agreement; and, most importantly, whether the Defendant acted with the intent required to support the claims presented by PAH.

PAH alleges that the Defendant intentionally interfered with the Build-Out Contract between PAH and Europa.  Specifically, PAH alleges that it refused to pay EA's bill for valid reasons, that the Defendant was familiar with the terms of the oral Build-Out Contract, that Europa was not permitted under the Build-Out Contract to pay EA's bill and seek reimbursement from PAH, that Europa's payment of the EA's bill and subsequent

submission of the bill to PAH was a breach of the Build-Out Contract, and that the Defendant thereby intentionally procured Europa's breach of the Build-Out contract. PAH also alleges that the Defendant's submission of EA's unpaid bill to Europa and Europa's payment of that bill and placement of the charges on its bill to PAH with a 15% mark-up, constitutes a conspiracy between the Defendant and Europa to harm PAH.

There remain genuine disputes of material fact on these claims as well. Outstanding disputes include, *inter alia*, whether the Defendant knew the terms of the oral Build-Out Contract and whether the Defendant acted with the intent required to prove PAH's claims.

**Section 727(a)(7)**

PAH seeks entry of summary judgment denying the Defendant's discharge pursuant to section 727(a)(7). To prove the claim as presented in this case, PAH must show that the Defendant (1) acted in a manner specified in section 727(a)(2); (2) within one year prior to the petition date or after the petition date; (3) in a bankruptcy case involving an insider of the Defendant. For purposes of this adversary proceeding, the insider in question is EA, also a chapter 7 debtor. The elements of a cause of action under section 727(a)(2) are: (a) an intent to hinder, delay or defraud, (b) a creditor or an officer of the estate, (c) by transferring, removing, destroying, mutilating or concealing, (d) property of the debtor, (e) within one year before the petition date or after the petition date. PAH alleges that the Defendant, with intent to hinder, delay, or defraud PAH and other creditors, caused EA to transfer substantially all of its assets to GE. PAH argues that the Defendant caused such transfer of the business of EA to GE in an effort to make PAH's claim against EA uncollectable. The Defendant states that GE was formed for the purpose of taking advantage of certain business opportunities available only to minority owned businesses.

There remain genuine disputes of material fact on PAH's section 727(a)(7) claim. Outstanding disputes include, *inter alia*, whether the Defendant had the requisite intent to hinder, delay or defraud a creditor.

**Request to strike affidavits**

In its reply, PAH argues that the Defendant's affidavits exceed the twenty-page aggregate limit for affidavits or declarations established in this Court's *Order Setting Filing and Disclosure Requirements for Pretrial and Trial* and the *Order (I) Continuing Hearing on Motion to Extend Time and (II) Continuing Pretrial Conference*. The overage in this case is *de minimis*. PAH does not allege that it suffered prejudice as a result of the overage. The request to strike the affidavits is denied.

Accordingly, it is ORDERED AND ADJUDGED that the Motion [ECF No. 34] is DENIED.

###

Copies Furnished To:

Ari Newman, Esq.

*Ari Newman, Esq. is directed to serve a conformed copy of this Order on all appropriate parties and to file a certificate of service with the court.*